IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| CHEAP ESCAPE INC. d/b/a JB DOLLAR STRETCHER, | Case No. 3:12-cv-00083-JZ |
| Plaintiff, | |
| | Honorable Jack Zouhary |
| v. | |
| RR DONNELLEY & SONS CO., RR DONNELLEY RESPONSE MARKETING SERVICES, and RR DONNELLEY MANUFACTURING, | |
| Defendants. | |

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendant, RR Donnelley & Sons Company ("Donnelley"), by its attorneys, states the following as its Answer, Affirmative Defenses and Counterclaim to Cheap Escape Inc. d/b/a JB Dollar Stretcher's Complaint:

### PARTIES AND JURISDICTION

1. Plaintiff, JB Dollar is an Ohio Corporation, whose business includes, among other things, the production of a weekly catalog distributed throughout Ohio and the surrounding states. JB Dollar's principal place of business is in Summit County Ohio at all times relevant to this action.

**ANSWER:** Donnelley admits the allegations contained in Paragraph 1.

1

2. Defendant, RR Donnelley & Sons Company is a Delaware Corporation, whose principal place business is 3075 Highland Parkway Downers Grove, IL 60515. RR Donnelley & Sons Company is in the business of, among other things, printing, distribution and delivery of printed items and other related printing services.

**ANSWER:** Donnelley admits that it is a Delaware corporation, that its principal place of business is in Illinois and that it is in the business of, among other things, printing, distribution and delivery of printed items and other related printing services. Donnelley denies the remaining allegations contained in Paragraph 2.

3. RR Donnelley Response Marketing Services is, upon information and belief, a division, subsidiary and/or agent of RR Donnelley & Sons Company, and is doing business in Hebron, Ohio, and whose activities include, among other things, printing, distribution and delivery of printed items and other related printing services.

**ANSWER:** Donnelley admits that RR Donnelley Response Marketing Services is a Donnelley business unit doing business in Hebron, Ohio, and whose activities include, among other things, printing, distribution and delivery of printed items and other related printing services. Donnelley denies the remaining allegations contained in Paragraph 3.

4. RR Donnelley Manufacturing is, upon information and belief, a division, subsidiary and/or agent of RR Donnelley & Sons Company, and is doing business in the city of Willard, and county of Huron, Ohio, and whose activities include, among other things, printing, distribution and delivery of printed items and other related printing services.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 4.

5. This Court has personal jurisdiction over RR Donnelley pursuant to R.C.2307.382, either through itself or its agents, by transacting business in this state, by contracting to supply services or goods in this state, by causing injury in this state by an act or omission outside this state by soliciting business, and/or engaging in a persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered in this state, and by causing injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when they might reasonably have expected that some person (e.g. JB Dollar) would be injured thereby in this state.

**ANSWER:** Donnelley admits that there is personal jurisdiction over it. Donnelley denies the remaining allegations contained in Paragraph 5.

6. Venue is proper, pursuant to Ohio R. Civ. P., Rule 3(B), in Huron County for the above stated reasons and also because, at all times relevant, RR Donnelley's Willard, Ohio location, is located in this county.

**ANSWER:** Donnelley admits that venue is proper. Donnelley denies the remaining allegations contained in Paragraph 6.

## THE FACTS

7. On or about June 4, 2007, JB Dollar and Donnelley, by and through its duly authorized Chief Operating Officer, John Paloian, executed a contract governing the production of JB Dollar's weekly publication for a period of six and one half (6 1/2) years.

**ANSWER:** In response to paragraph 7, Donnelley admits that, in June, 2007, JB Dollar and RR Donnelley, by and through its duly authorized Chief Operating Officer, John Paloian, executed a contract (the "Agreement") governing the production of JB Dollar's weekly publication for a period of six and one half years. Donnelley denies that the contract was executed on June 4, 2007.

8. A copy of this contract and its exhibits is attached hereto as Exhibit A, and is incorporated in its entirety.

**ANSWER:** Donnelley admits the allegations contained in Paragraph 8.

9. Among the items that were included in the services that RR Donnelley agreed to provide to JB Dollar pursuant were manufacturing, paper, ink, presswork, mailing, storage, freight and binding.

**ANSWER:** In response to Paragraph 9, Donnelley states that the Agreement (Exhibit A) speaks for itself.

10. The parties to the contract, JB Dollar and RR Donnelley, agreed upon set pricing schedules, which were attached to the agreement.

**ANSWER:** Donnelley admits that pricing schedules were attached to the Agreement. Donnelley denies the remaining allegations contained in Paragraph 10.

11. JB Dollar and RR Donnelley also agreed upon certain prices which were variable and/or contingent, but tied to market factors such as costs of raw materials and increases in freight.

**ANSWER:** Donnelley admits the allegations contained in Paragraph 11.

12. RR Donnelley agreed to perform and charge JB Dollar for the work described in the agreement in an honest, timely, workmanlike and commercially reasonable manner explicitly on page 9 of the agreement and implicitly, since, implied in all contracts is a duty of good faith and fair dealing.

**ANSWER:** In response to paragraph 12, Donnelley admits that, on page 9 of the Agreement, Donnelley agreed to "perform the work in a good and workmanlike manner and in accordance with the specifications and production schedule." Donnelley denies all allegations inconsistent with the foregoing provision. In further response, paragraph 12 states a legal conclusion, to which no response is required.

13. On numerous occasions since the inception of the agreement, RR Donnelley provided JB Dollar with inferior goods and services, and its substandard performance has caused JB Dollar to incur direct economic loss.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 13.

14. On every occasion for which it had notice, JB Dollar immediately brought RR Donnelley's substandard performance to its attention.

**ANSWER:** In response to paragraph 14, Donnelley admits that, in rare instances over the course of the parties' long relationship, JB Dollar brought to Donnelley's attention certain minor printing or production issues. Donnelley denies that its performance was substandard and denies the remaining allegations contained in Paragraph 14.

15. On numerous items, RR Donnelley has systematically overcharged JB Dollar during the performance of the contract.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 15.

16. The most egregious of these overcharges was RR Donnelley's inclusion of a separate binding charge from the inception of the agreement that was over and above the agreed

4

upon base price. As specified on Page 4 of the agreement, however, binding was included in the base price agreed upon by the parties.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 16.

17. RR Donnelley issued invoices to JB Dollar which were in tiny, illegible font.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 17.

18. On numerous occasions, JB Dollar has questioned various charges that RR Donnelley had invoiced and inquired as to their basis.

**ANSWER:** Donnelley admits the allegations contained in Paragraph 18.

19. On every occasion, RR Donnelley had provided JB Dollar with inaccurate explanations for its charges and, until recently, refused to provide legible invoices.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 19.

20. Furthermore, upon JB Dollar's inquiries, RR Donnelley retaliated against JB Dollar by arbitrarily raising its rates, on the pretext of increases in its costs concerning items such as manufacturing, paper, ink, presswork, mailing, storage, freight and binding.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 20.

21. Also, on numerous occasions, RR Donnelley extended credit to JB Dollar for its goods and services rendered (including the substandard and/or overcharged goods and services that are the subject herein), causing a substantial creditor-debtor relationship between RR Donnelley and JB Dollar.

**ANSWER:** In response to paragraph 21, Donnelley admits that it extended credit to JB Dollar, pursuant to the terms of the Agreement. Donnelley further admits that it was in a creditor-debtor relationship with JB Dollar. Donnelley denies that the goods and services were substandard and that Donnelley overcharged JB Dollar for goods and services.

22. Upon JB Dollar's inquiries into its pricing, RR Donnelley threatened and/or attempted to revoke and/or collect upon JB Dollar's outstanding credit.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 22.

23. Also, for several reasons, it was not economically feasible for JB Dollar to terminate the agreement.

**ANSWER:** In response to paragraph 23, Donnelley denies that JB Dollar had a valid basis to terminate the Agreement. Donnelley lacks sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 23 and therefore denies same.

24. For example, the agreement contains various one-sided, unconscionable provisions that are contrary to public policy, such as terms requiring JB Dollar to pay attorneys fees for failure to pay outstanding invoices, and terms allowing RR Donnelley to assert a lien on JB Dollar's printed materials (e.g. hold its catalogs hostage). The agreement also provided that it would be governed by Illinois law.

**ANSWER:** In response to paragraph 24, Donnelley admits that the Agreement contains provisions requiring JB Dollar to pay all costs of collection, including but not limited to, reasonable attorneys' fees if JB Dollar fails to pay Donnelley's invoices in accordance with the terms of the Agreement. Donnelley further admits that the Agreement grants Donnelley the right, as security for payments of any sums due or to become due to it, to retain possession of and have a lien on all JB Dollar property, including work in process and undelivered work in Donnelley's possession. Donnelley admits that the Agreement is governed by Illinois law. Donnelley denies the remaining allegations contained in Paragraph 24.

25. Furthermore, on page one of the agreement, RR Donnelley included an unlawful penalty provision which provided, in pertinent part, that if JB Dollar terminates the agreement prior to December 31, 2013, RR Donnelley would collect a figure totaling $800,000.00 multiplied by a fraction totaling the number of remaining months under the contract divided by 79.

**ANSWER:** In response to paragraph 25, Donnelley admits that the Agreement contains a provision which provides that if JB Dollar terminates the agreement prior to December 31, 2013, Donnelley may elect, as one of its remedies, to collect a figure totaling $800,000.00 multiplied by a fraction totaling the number of remaining months under the contract divided by 79. Donnelley denies the remaining allegations contained in Paragraph 25.

26. By way of example, as of December 31, 2011, the total penalty that JB Dollar would allegedly owe RR Donnelley for terminating the agreement twenty-four months prematurely, equals $243,037.92.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 26.

27. Also, RR Donnelley has been JB Dollar's exclusive printer since the beginning of the agreement.

**ANSWER:** Donnelley lacks sufficient information to form a belief as to the truth of the allegations contained in Paragraph 27 and therefore denies same.

28. JB Dollar's business is such that, even a short interruption of print services, would cause JB Dollar to incur substantial losses.

**ANSWER:** Donnelley lacks sufficient information to form a belief as to the truth of the allegations contained in Paragraph 28 and therefore denies same.

29. By virtue of its position as JB Dollar's sole provider of printed goods and services and its position as a creditor and holder of an unlawful penalty provision, RR Donnelley has exerted substantial pressure on JB Dollar.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 29.

30. Because of this pressure, and because of RR Donnelley's false, inaccurate, misleading and/or ambiguous explanation for its inflated invoices, combined with RR Donnelley's retaliatory measures, JB Dollar could not and did not obtain further explanation or redress.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 30.

31. Recently, JB Dollar consulted with various "print consultants", whose paid expertise includes deciphering RR Donnelley's pricing scheme and invoices.

**ANSWER:** Donnelley lacks sufficient information to form a belief as to the truth of the allegations contained in Paragraph 31 and therefore denies same.

32. In addition to explaining and vindicating the concerns that JB Dollar had raised since the inception of this agreement, the print consultants were able to determine that RR Donnelley's invoicing included charges which far exceeded JB Dollar's outstanding balance.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 32.

33. JB Dollar confronted RR Donnelley with newly discovered overcharges in 2007 totaling $518,111.49, in 2008 totaling $1,106,017.33, in 2009 totaling $1,151,788.03, in 2010 totaling $1,178,974.83, in 2011, totaling $1,141,728.01.

**ANSWER:** In response to paragraph 33, Donnelley admits that JB Dollar alleged that Donnelley overcharged it. Donnelley denies the remaining allegations contained in Paragraph 33 and denies that it overcharged JB Dollar.

34. To date, JB Dollar has not been compensated for its losses.

**ANSWER:** Donnelley denies that JB Dollar has suffered any losses and, therefore, denies the allegations contained in Paragraph 34.

### FIRST COUNT
### (JB Dollar's Breach of Contract
### claim against RR Donnelley)

35. JB Dollar incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Donnelley restates its answers to all previous paragraphs of this Answer as and for its answer to Paragraph 35.

36. JB Dollar contracted with RR Donnelley to provide goods and services related to JB Dollar's printed catalog in and around the state of Ohio.

**ANSWER:** Donnelley admits the allegations contained in Paragraph 36.

37. At all relevant times, JB Dollar paid RR Donnelley's invoices in a timely manner in accordance with the "net cash 60" portion of this contract, and otherwise performed its material obligations under the contract.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 37.

38. Any breach or alleged breach by JB Dollar of any claimed duty is immaterial, has been waived and has otherwise caused no prejudice to RR Donnelley.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 38.

39. By its failure to charge JB Dollar in conformance with the terms and conditions of the contract, RR Donnelley materially breached its contract with JB Dollar.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 39.

40. Specifically, RR Donnelley agreed to perform and charge JB Dollar for the work described in the agreement in an honest, timely, workmanlike and commercially reasonable manner explicitly on page 9 of the agreement and implicitly, since implied in all contracts is a duty of good faith and fair dealing.

**ANSWER:** In response to paragraph 40, Donnelley admits that, on page 9 of the Agreement, Donnelley agreed to "perform the work in a good and workmanlike manner and in accordance with the specifications and production schedule." Donnelley denies all allegations inconsistent with the foregoing provision. In further response, paragraph 40 states a legal conclusion, to which no response is required.

41. On numerous occasions since the inception of the agreement, RR Donnelley provided JB Dollar with inferior goods and services, and its substandard performance has caused JB Dollar to incur direct economic loss.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 41.

42. On numerous items, RR Donnelley has systematically overcharged JB Dollar during the performance of the contract. For example, RR Donnelley has charged JB Dollar for binding services which are to be included in the base price for services, thereby over-charging and double billing for such services.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 42.

43. Also, in breach of RR Donnelley's implied duty of good faith and fair dealing, RR Donnelley retaliated against JB Dollar for confronting it with the above described conduct.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 43.

44. By virtue of these acts and the other conduct as described above, RR Donnelley breached its contract JB Dollar.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 44.

45. By virtue of these breaches, which are material, JB Dollar has incurred damages, including having not been reimbursed for losses so far totaling in excess of $5,096,619.71, interest on that sum, costs, interruption of business and continued distress.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 45.

## SECOND COUNT
## (JB Dollar's Request for a
## Declaratory Judgment)

46.     JB Dollar incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**   Donnelley restates is answers to all previous paragraphs of this Answer as and for its answer to Paragraph 46.

47.     The June 4, 2007 agreement contains various one-sided, unconscionable provisions that are contrary to public policy, such as terms requiring JB Dollar to pay attorneys fees for failure to pay outstanding invoices, and terms allowing RR Donnelley to assert a lien on JB Dollar's printed materials (e.g. hold its catalogs hostage). The agreement also provided that it would be governed by Illinois law.

**ANSWER:**   In response to paragraph 47, Donnelley admits that the Agreement contains provisions requiring JB Dollar to pay all costs of collection, including but not limited to, reasonable attorneys' fees if JB Dollar fails to pay Donnelley's invoices in accordance with the terms of the Agreement.  Donnelley further admits that the Agreement grants Donnelley the right, as security for payments of any sums due or to become due to it, to retain possession of and have a lien on all JB Dollar property, including work in process and undelivered work in Donnelley's possession.  Donnelley admits that the Agreement is governed by Illinois law. Donnelley denies the remaining allegations contained in Paragraph 47.

48.     Furthermore, on page one of the agreement, RR Donnelley included an unlawful penalty provision which provided, in pertinent part, that if JB Dollar terminates the agreement prior to December 31, 2013, RR Donnelley would collect a figure totaling $800,000.00 multiplied by a fraction totaling the number of remaining months under the contract divided by 79.

**ANSWER:**   In response to paragraph 48, Donnelley admits that the Agreement contains a provision which provides that if JB Dollar terminates the agreement prior to December 31, 2013, Donnelley may, as one of its remedies, elect to collect a figure totaling

$800,000.00 multiplied by a fraction totaling the number of remaining months under the contract divided by 79. Donnelley denies the remaining allegations contained in Paragraph 48.

49. By way of example, as of December 31, 2011, the total penalty that JB Dollar would allegedly owe RR Donnelley for terminating the agreement twenty-four months prematurely, equals $243,037.92.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 49.

50. In light of the above described actions and breaches of contract, enforcement of these provisions would be unlawful and inequitable.

**ANSWER:** Donnelley denies the allegations contained in Paragraph 50.

51. JB Dollar seeks a declaration that these unconscionable terms do not apply.

**ANSWER:** Donnelley admits that JB Dollar seeks a declaration that the terms do not apply. Donnelley denies that the referenced terms are unconscionable and do not apply.

## AFFIRMATIVE DEFENSES

1. Plaintiff complains of overcharges on the Agreement, which took effect in June, 2007 – approximately 4-1/2 years before the Complaint was filed. 810 ILCS 5/2-725 provides that an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. To the extent that the Complaint raises any claims, these claims are barred to the extent they rely upon or relate to alleged overcharges that occurred more than four years before the filing of the Complaint.

2. Plaintiff complains of overcharges on the Agreement, which took effect in June, 2007 – approximately 4-1/2 years before the Complaint was filed. Plaintiff reviewed, approved and paid invoices that contained binding charges in them to Donnelley from 2007 through 2011. Based on the foregoing, to the extent that the Complaint raises any claims, these claims are barred in whole or in part by the equitable doctrine of estoppel.

11

3. Plaintiff complains of overcharges on the Agreement, which took effect in June, 2007 – approximately 4-1/2 years before the Complaint was filed. Plaintiff reviewed, approved and paid invoices that contained binding charges in them to Donnelley from 2007 through 2011. Based on the foregoing, to the extent that the Complaint raises any claims, these claims are barred in whole or in part by the equitable doctrine of waiver.

4. Plaintiff complains of overcharges on the Agreement, which took effect in June, 2007 – approximately 4-1/2 years before the Complaint was filed. Plaintiff reviewed, approved and paid invoices that contained binding charges in them to Donnelley from 2007 through 2011. Based on the foregoing, to the extent that the Complaint raises any claims, these claims are barred in whole or in part by the equitable doctrine of laches for the failure to raise the claims alleged in this lawsuit in a timely manner.

5. JB Dollar has breached the Agreement by failing to pay Donnelley for certain invoices issued to JB Dollar totaling $2,052,985.79. To the extent that the Complaint raises any claims, Donnelley is entitled to a set-off against said claims as a result of JB Dollar's failure to pay those invoices, which is a breach of the Agreement.

6. Plaintiff reviewed, approved and paid invoices that contained binding charges in them to Donnelley from 2007 through 2011. To the extent that the Complaint raises any claims, these claims are barred by the parties' course of dealing.

WHEREFORE, Defendant, R.R. DONNELLEY & SONS CO., denies that Plaintiff, CHEAP ESCAPE INC. d/b/a JB DOLLAR STRETCHER, is entitled to the relief prayed for in the Complaint in whole or in part, or any other relief and requests that judgment be entered in its favor, along with an award of costs in defending this action, and all other relief this Court deems appropriate.

## COUNTERCLAIM

### PARTIES, JURISDICTION AND VENUE

1. Donnelley is a Delaware Corporation, whose principal place business is in Chicago, Illinois. Donnelley is in the business of, among other things, printing, distribution and delivery of printed items and other related printing services.

2. JB Dollar is an Ohio Corporation, whose business includes, among other things, the production of a weekly catalog distributed throughout Ohio and the surrounding states. JB Dollar's principal place business is in Summit County Ohio.

3. Diversity jurisdiction exists under 28 U.S.C. § 1332 because: (i) presently and at the time JB Dollar's Complaint was filed, JB Dollar was and is a corporation organized under the laws of State of Ohio; conversely, Donnelley was and is a corporation organized under the laws of the State of Delaware with its corporate headquarters and principal place of business in the State of Illinois, and (ii) the amount in controversy is in excess of $75,000.00.

4. Venue is proper under: (i) 28 U.S.C. § 1391(a)(2) because a substantial part of the events on which JB Dollar's Complaint and Donnelley's Counterclaim are based occurred in the Federal District where JB Dollar's Complaint and Donnelley's Counterclaim are brought, and (ii) pursuant to 28 U.S.C. § 1441 Donnelley removed JB Dollar's action to the Federal District embracing the place where JB Dollar's state court action was filed.

5. JB Dollar is subject to the personal jurisdiction of this Court because: (i) the acts complained of in the Complaint and Counterclaim occurred in this Federal District (ii) JB Dollar is a resident of this Federal District and (iii) JB Dollar conducts business in this Federal District.

### COUNT I – BREACH OF CONTRACT

6. In June, 2007, JB Dollar and Donnelley entered into a contract (the "Agreement"), pursuant to which, JB Dollar agreed to purchase from Donnelley "all preliminary

13

work, cylinder making and/or plate making, printing, binding, loading and mailing" required for the production of JB Dollar catalogs. A copy of the Agreement is attached as Exhibit A to JB Dollar's Complaint.

7. The Agreement specifies that JB Dollar shall engage Donnelley and that Donnelley is entitled to perform the work referenced in Paragraph 6 "continuing through completion of any work in process as of December 31, 2013."

8. The Agreement further provides that, in the event JB Dollar terminates the Agreement prior to December 31, 2013, JB Dollar agrees to pay Donnelley $800,000 multiplied by a fraction of which the numerator is the number of months remaining on the Agreement and the denominator is 79.

9. At all times relevant, Donnelley performed its obligations under the Agreement by printing, binding, producing, and delivering catalogs to and for JB Dollar in a timely manner.

10. From August through December, 2011, Donnelley issued various invoices (the "Unpaid Invoices") to JB Dollar in the aggregate amount of $2,052,985.79, for goods and services it provided to JB Dollar in connection with the printing of the catalogs. A list of the Unpaid Invoices is attached as **Exhibit A**.

11. Despite ordering, accepting, and using the catalogs Donnelley sold it, JB Dollar breached the Agreement: (a) by failing to pay Donnelley on any of the Unpaid Invoices; and (b) by terminating the Agreement on December 16, 2011 without cause.

12. As a direct and proximate result of JB Dollar's breach, Donnelley has been damaged in multiple respects. First, Donnelley is owed the principal amount of $2,052,985.79 for the Unpaid Invoices. Second, Donnelley is owed damages pursuant to the "Business Incentive" paragraph of the Agreement - $243,037.97 for JB Dollar's premature termination

($800,000 multiplied by 24/79) and $7,039.95 due to the fact that JB Dollar's manufacturing and ink sales revenue did not exceed $3.8 million for 2011. Third, Donnelley purchased $124,268.00 worth of paper specifically for JB Dollar which it has been unable to re-sell to third parties, for which JB Dollar is required to reimburse Donnelley. Fourth, Donnelley has suffered lost future profits in an amount to be determined at trial. Fifth, Donnelley is entitled to attorneys' fees and interest, pursuant to the Agreement.

**WHEREFORE**, Counter-Plaintiff, R.R. DONNELLEY & SONS CO. demands judgment in its favor and against Counter-Defendant, CHEAP ESCAPE INC. d/b/a JB DOLLAR STRETCHER:

(a) Awarding Donnelley compensatory, consequential and incidental damages in an amount to be determined at trial, as set forth above;

(b) Awarding Donnelley interest at the rate of 1-1/2% per month pursuant to the Agreement; and

(c) Awarding Donnelley an amount equal to the costs and expenses incurred herein, including reasonable attorneys fees pursuant to the Agreement, together with any further relief as this Court may deem just and proper.

## COUNT II – ACCOUNT STATED

1-10. Donnelley restates Paragraphs 1 through 10 of Count I as and for Paragraphs 1 through 10 for this Count II.

11. JB Dollar has retained the Unpaid Invoices beyond a reasonable time limit without objection, and therefore acquiesced to the correctness of the amounts stated.

12. JB Dollar's acquiescence constitutes an account stated, and Donnelley is entitled to payment of the outstanding indebtedness owed to it on the Unpaid Invoices, namely $2,052,985.79, plus applicable interest and costs.

13. In light of JB Dollar's vexatious and unreasonable delay in payment of monies owed, Donnelley is entitled to prejudgment interest.

**WHEREFORE**, Counter-Plaintiff, R.R. DONNELLEY & SONS CO., demands judgment in its favor and against Counter-Defendant, CHEAP ESCAPE INC. d/b/a JB DOLLAR STRETCHER:

(a) Awarding Donnelley the principal amount of $2,052,985.79;

(b) Awarding Donnelley prejudgment interest; and

(c) Awarding Donnelley an amount equal to the costs and expenses incurred herein, together with any further relief as this Court may deem just and proper.

RR DONNELLEY & SONS COMPANY

By: */s/David P. Strup*
    One of their Attorneys

David R. Strup (0034665)
Sarah K. Skow (0081468)
COOPER & KOWALSKI, LPA
900 Adams Street
Toledo, Ohio 43604
(419) 241-1200
Fax (419) 242-5675
e-mail: strup@cklpa.com
        skow@cklpa.com

Jeffrey L. Widman (#6226367)
(Motion for Pro Hac Vice Admission pending)
SHAW GUSSIS FISHMAN GLANTZ
   WOLFSON & TOWBIN LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151
e-mail: jlwidman@shawgussis.com

## JURY DEMAND

Defendant hereby demands a trial by jury.

                                           RR DONNELLEY & SONS COMPANY

                                           By:      */s/David P. Strup*
                                                           One of their Attorneys

                                         David R. Strup (0034665)
                                         Sarah K. Skow (0081468)
                                         COOPER & KOWALSKI, LPA
                                         900 Adams Street
                                         Toledo, Ohio 43604
                                         (419) 241-1200
                                         Fax (419) 242-5675
                                         e-mail: strup@cklpa.com
                                                    skow@cklpa.com

                                         Jeffrey L. Widman (#6226367)
                                         (Motion for Pro Hac Vice Admission pending)
                                         SHAW GUSSIS FISHMAN GLANTZ
                                            WOLFSON & TOWBIN LLC
                                         321 North Clark Street, Suite 800
                                         Chicago, Illinois 60654
                                         (312) 541-0151
                                         e-mail: jlwidman@shawgussis.com

## **CERTIFICATE OF SERVICE**

This is to certify that on this 20th day of January, 2012, the foregoing Answer, Affirmative Defenses and Counterclaim was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

                                                   */s/David P. Strup*
                                                 David R. Strup
                                                 Sarah K. Skow